**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DOLORES HUNTER; ESTATE OF
BENJAMIN G. FRANCIS,
          *Plaintiffs-Appellants,*

          v.

PHILIP MORRIS USA; ALTRIA
GROUP, INC.; THE ALASKA
COMMERCIAL COMPANY,
          *Defendants-Appellees.*

No. 07-35916

DC No.
CV 07-0010 RRB

OPINION

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted August 4, 2008
Anchorage, Alaska
Submission Vacated and Deferred October 29, 2008*
Resubmitted August 27, 2009

Filed September 28, 2009

Before: Dorothy W. Nelson, A. Wallace Tashima, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Tashima

---

*Submission of this case was vacated and deferred pending the
Supreme Court's decision in *Altria Group, Inc. v. Good*, 129 S. Ct. 538
(2008).

13909

**COUNSEL**

Don C. Bauermeister, Burke & Bauermeister, PLLC, Anchorage, Alaska, for the plaintiff-appellant.

John W. Phillips, Phillips Law Group, PLLC, Seattle, Washington, for the defendants-appellees.

**OPINION**

TASHIMA, Circuit Judge:

The question of the preemption of state law by federal tobacco legislation has been addressed numerous times. Today, we address the preemption issue in the context of the doctrine of fraudulent joinder, which is invoked to achieve diversity jurisdiction. We hold that the district court erroneously allowed the defendants-appellees to achieve diversity jurisdiction by its incorrect finding that the plaintiffs-appellants' state law claims were preempted and constituted fraudulent joinder. Because the district court should have remanded the action to state court, we vacate the judgment

and remand with instructions to remand the action to state court. We have jurisdiction over the final judgment of the district court pursuant to 28 U.S.C. § 1291.

## BACKGROUND

Benjamin Francis, an Alaska resident and citizen, died at age fifty-two from lung cancer. As Francis' survivor and on behalf of his estate, Dolores Hunter brought a wrongful death lawsuit in Alaska state court against Philip Morris USA, a Virginia corporation that produces, markets, and distributes cigarettes; Altria Group, the parent company of Philip Morris USA; and the Alaska Commercial Company ("ACC"), an Alaska corporation that sells merchandise, including cigarettes manufactured by Philip Morris, in stores throughout Alaska (all three Appellees are collectively referred to as "Appellees").

Hunter alleged that Francis' death resulted from defective products sold by Appellees. Hunter's complaint included claims of: (I) fraud and misrepresentation, (II) products liability, (III) failure to warn, (IV) deceptive advertising, (V) breach of warranty, (VI) conspiracy, and (VII) addiction defectiveness.

Philip Morris and Altria (together, the "Altria defendants") removed the case to the United States District Court for the District of Alaska. They argued that Hunter's state law claims against ACC were preempted by congressional policy not to remove tobacco from the market and that ACC therefore was fraudulently joined, resulting in complete diversity of citizenship. The Altria defendants then filed a motion to dismiss Hunter's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Hunter filed a motion to remand, asserting that her complaint adequately pleaded a strict products liability claim against ACC under Alaska state law. She argued that ACC was not fraudulently

joined and, consequently, that total diversity between plaintiff and all defendants did not exist.

The district court denied Hunter's motion to remand. The court agreed with the Altria defendants that Hunter's state product liability claim against ACC was preempted because it would result in an effective ban on cigarettes, in contravention of congressional policy. Hunter therefore had stated no possible claim against ACC. The court accordingly found that ACC was fraudulently joined, resulting in diversity of citizenship. The court denied Hunter's motion for reconsideration.

The district court then granted the 12(b)(6) motion to dismiss, reasoning that Hunter had failed to identify the specific products Francis used and the alleged defects in the products, and that any product liability claims were preempted by the congressional intent not to ban the sale of cigarettes. The district court entered final judgment in favor of Appellees. Hunter timely appealed.

## DISCUSSION

Hunter contends that the district court erred in denying her motion to remand the case to state court and, accordingly, that the court lacked jurisdiction to grant the Altria defendants' motion to dismiss. We review de novo the district court's denial of a motion to remand to state court for lack of removal jurisdiction. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243 (9th Cir. 2009); *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

**[1]** A defendant may remove an action to federal court based on federal question jurisdiction or diversity jurisdiction. 28 U.S.C. § 1441. However, " '[i]t is to be presumed that a cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction.' " *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (quoting *Kok-*

*konen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)) (alterations in original). The "strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper," and that the court resolves all ambiguity in favor of remand to state court. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam) (internal quotation marks omitted).

   **[2]** " 'The threshold requirement for removal under 28 U.S.C. § 1441 is a finding that the complaint contains a cause of action that is within the original jurisdiction of the district court.' " *Ansley v. Ameriquest Mortgage Co.*, 340 F.3d 858, 861 (9th Cir. 2003) (quoting *Toumajian v. Frailey*, 135 F.3d 648, 653 (9th Cir. 1998)). In determining federal question jurisdiction, the well-pleaded complaint rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Fisher v. NOS Commc'ns (In re NOS Commc'ns)*, 495 F.3d 1052, 1057 (9th Cir. 2007) (internal quotation marks and citations omitted). Thus, the plaintiff is "the master of his complaint" and may "avoid federal jurisdiction by relying exclusively on state law." *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1106 (9th Cir. 2000). It is "settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 14 (1983); *see also Vaden v. Discover Bank*, 129 S. Ct. 1262, 1272 (2009) ("Federal jurisdiction cannot be predicated on an actual or anticipated defense."); *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1075 (9th Cir. 2005) ("A federal law defense to a state-law claim does not confer jurisdiction on a federal court, even if the defense is that of federal preemption and is anticipated in the plaintiff's complaint."); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1319 (9th Cir. 1998) ("Even when the area involved is one where complete preemption is the norm, if the

complaint relies on claims outside of the preempted area and does not present a federal claim on its face, the defendant must raise its preemption defense in state court.").

**[3]** As for diversity jurisdiction, federal district courts have jurisdiction over suits for more than $75,000 where the citizenship of each plaintiff is different from that of each defendant. 28 U.S.C. § 1332(a). Although an action may be removed to federal court only where there is complete diversity of citizenship, 28 U.S.C. §§ 1332(a), 1441(b), "one exception to the requirement for complete diversity is where a non-diverse defendant has been 'fraudulently joined.' " *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Joinder is fraudulent " '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.' " *Hamilton Materials*, 494 F.3d at 1206 (quoting *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)) (alteration in original). In such a case, the district court may ignore the presence of that defendant for the purpose of establishing diversity. *Morris*, 236 F.3d at 1067.

The Altria defendants removed the case to federal court based on diversity of citizenship, not federal question jurisdiction. In order to establish diversity, the Altria defendants contended that Hunter's claims against ACC were both impermissibly vague and subject to conflict preemption and, accordingly, that ACC had been fraudulently joined. Removal accordingly was based on a meld of the implied preemption doctrine from the federal question context and the fraudulent joinder doctrine from the diversity context.

**[4]** The Altria defendants relied in the district court, and rely here, on the Supreme Court's decision in *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 137 (2000) ("*FDA*"), to argue that Hunter's product liability claim was impliedly preempted by the congressional intent to prevent the categorical ban of cigarettes. The issue in *FDA*

was whether the FDA had jurisdiction to regulate tobacco products pursuant to the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301-397.[1] The Court held that "Congress has clearly precluded the FDA from asserting jurisdiction to regulate tobacco products" because, if the FDA were to regulate tobacco, the provisions of the FDCA would have required the FDA to ban tobacco altogether. *Id.* at 126, 137. "Congress, however, has foreclosed the removal of tobacco products from the market." *Id.* at 137.

The district court agreed with the Altria defendants' reliance on *FDA* in denying Hunter's motion to remand. The court thus concluded that Hunter's product liability claim against ACC was preempted because allowing such a claim would result in an effective ban on the sale of tobacco products in contravention of congressional objectives. We disagree with the district court's reasoning on two grounds. First, we disagree with the Altria defendants' use of the affirmative defense of implied preemption as a basis for asserting fraudulent joinder in order to invoke diversity jurisdiction. Second, even if the defendants were to be allowed to use the defense of federal preemption to establish fraudulent joinder, we conclude that Hunter's state product liability claim is not impliedly preempted by federal law.

The use of the affirmative defense of federal preemption to assert fraudulent joinder in order to establish diversity jurisdiction was addressed by the Fifth Circuit in *Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568 (5th Cir. 2004) (en banc). In *Smallwood*, the plaintiff, Kelli Smallwood, a citizen of Mississippi, sued Illinois Central, an Illinois corporation that operated a train in Mississippi, and the Mississippi

---

[1]On June 22, 2009, President Obama signed the Family Smoking Prevention and Tobacco Control Act, Pub. L. No. 111-31, 123 Stat. 1776 (2009), which granted the FDA authority to regulate tobacco products. This legislation, however, does not "affect any action pending in Federal [or] State . . . court." *Id.* § 4(a)(2), 123 Stat. at 1782.

Department of Transportation in state court for negligence. Illinois Central removed the case to federal court, arguing that the in-state defendant was improperly joined because Smallwood had no reasonable possibility of recovery against it because Smallwood's claims were preempted by the Federal Railroad Safety Act. The district court agreed and granted summary judgment on the basis that Smallwood's claim against Illinois Central also was preempted. Thus, "the district court's decision that Smallwood's claims against the in-state defendant were preempted effectively decided the entire case." *Id.* at 571. The Fifth Circuit held that this was error. *Id.*

**[5]** The court explained that there are "two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.' " *Id.* at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)). The court addressed only the second type. *Id.* The court "caution[ed] that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant" and reasoned that "the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id.* at 573-74. The court further stated that "[t]he party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Id.* at 574; *see also Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1299 (11th Cir. 2007) (holding that, "if there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary").

*Smallwood* also addressed the unique situation when the same analysis applied to an assertion of fraudulent joinder applies to all defendants.

[W]hen, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit. In such cases, it makes little sense to single out the in-state defendants as "sham" defendants and call their joinder improper. In such circumstances, the allegation of improper joinder is actually an attack on the merits of plaintiff's case as such — an allegation that, as phrased by the Supreme Court in *Chesapeake & O.R. Co. v. Cockrell*, [232 U.S. 146, 153 (1914),] "the plaintiff's case [is] ill founded as to all the defendants."

385 F.3d at 574. Because there was no improper joinder, the case was remanded to the district court with instructions to remand to the state court from which it was removed. *See id.* at 576-77.

**[6]** We agree with the Fifth Circuit. Here, as in *Smallwood*, the district court's decision that Hunter's claims against ACC were preempted "effectively decided the entire case." *Id.* at 571. The Altria defendants' preemption argument accordingly should have been brought in the context of attacking the merits of Hunter's case, rather than as a basis for removing the case to federal court.

Our decision in *Ritchey* does not foreclose this holding. In *Ritchey*, we held that the statute of limitations defense is a permissible means by which to establish fraudulent joinder in order to remove an action on diversity grounds. We emphasized, however, that the statute of limitations defense is a "rather unique" defense that "does not truly go to the merits of the plaintiff's claim in any sense." 139 F.3d at 1319. Instead, it "virtually admits the validity of the cause of action and the plaintiff's right to collect upon it, but asserts that the

plaintiff waited too long to pursue the cause of action." *Id.* That defense accordingly is "a kind of procedural bar, and not one which relates to the merits of the case." *Id.*

**[7]** The preemption defense, by contrast, goes to the merits of the plaintiff's case. When a defendant asserts that the plaintiff's claim is impliedly preempted by federal law, it cannot be said that the plaintiff's failure to state a claim against the resident defendant is "obvious according to the settled rules of the state." *Hamilton Materials*, 494 F.3d at 1206 (internal quotation marks omitted). Rather, the preemption question requires an inquiry into the merits of the plaintiff's claims against all defendants and an analysis of federal law. In such a case, the defendant has failed to overcome the "strong presumption against removal jurisdiction." *Gaus*, 980 F.2d at 566.

**[8]** Here, for example, it is not obvious from the face of the complaint that Hunter has failed to state a claim against ACC. Hunter's complaint alleged: (1) that Francis "purchased and used cigarettes from defendants"; (2) the cigarettes were unsafe and defective and posed a risk that outweighed their utility; (3) Francis used defendants' cigarettes "without a change in condition," since they had left defendants' possession; (4) Francis developed lung cancer "as a direct and proximate result of the use of Defendants' unsafe and defective cigarettes"; and (5) this caused his family losses.[2]

**[9]** In Alaska, "[a] manufacturer is strictly liable in tort when an article he places on the market knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human." *Pratt & Whitney Can., Inc. v. Sheehan*, 852 P.2d 1173, 1176 (Alaska 1993) (quoting *Green-*

---

[2]Although Hunter raised numerous claims in her complaint, we address only her strict products liability claim, which is the claim she focuses on in her brief. We do not consider whether she has stated any other claim or claims on which relief can be granted.

*man v. Yuba Power Prods., Inc.*, 377 P.2d 897, 900 (Cal. 1963)). A plaintiff may claim strict products liability against a seller by proving that the product has a defect, that the defect causes an injury to a human being, and that the defendant is a seller. *Burnett v. Covell*, 191 P.3d 985, 988 (Alaska 2008). Construing Hunter's pleadings liberally, as required by Alaska's notice pleading rules, the complaint sufficiently alleges a strict products liability claim under Alaska law. *See Sykes v. Melba Creek Mining, Inc.*, 952 P.2d 1164, 1168 n.4 (Alaska 1998) (explaining that "[a] cause of action is sufficiently pled if it provides the defendant with fair notice of the nature of the claim," and that pleadings should be construed liberally (citing Alaska Ct. R. Civ. P. 8(a))). Because it is not obvious according to the settled rules of the state that Hunter has failed to state a claim against ACC, without looking to the federal law of preemption, we cannot find that the joinder was fraudulent.

**[10]** As the Eleventh Circuit has stated, "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) (per curiam). In *Tillman*, after receiving an answer to a certified question from the Alabama Supreme Court regarding the liability of retail defendants for selling cigarettes, the court held that the district court "erroneously asserted federal jurisdiction on the ground that [the retail defendants] had been fraudulently joined." *Id.* The court therefore vacated the district court's judgment in favor of R.J. Reynolds and remanded with instructions to remand the case to the state court. *Id.*

**[11]** Even if it were appropriate to raise implied preemption as a ground for a finding of fraudulent joinder, the Altria defendants would face both the strong presumption against removal jurisdiction and the "general presumption against fraudulent joinder." *Hamilton Materials*, 494 F.3d at 1206. In

order successfully to carry this heavy burden, they have relied on the doctrine of conflict preemption, which arises "where it is 'impossible for a private party to comply with both state and federal requirements,' or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990), and *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *see also Cipollone v. Ligget Group, Inc.*, 505 U.S. 504, 516 (1992) ("In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, . . . or if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it.") (internal quotation marks omitted).

"When addressing questions of express or implied preemption, we begin our analysis 'with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " *Altria Group, Inc. v. Good*, 129 S. Ct. 538, 543 (2008) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)) (alteration in original). This assumption "applies with particular force" where, as here, the field is one that is "traditionally occupied by the States." *Id.*

The Supreme Court and the appellate courts have addressed the question of the preemption of state law by federal tobacco legislation in a series of cases. *See, e.g.*, *Altria*, 129 S. Ct. 538; *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001); *Cipollone*, 505 U.S. 504; *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142 (9th Cir. 2005); *Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594 (8th Cir. 2005). Appellees emphasize that they do not rely on the doctrine of express preemption, which was at issue in, for example, *Lorillard*, *Cipollone*, and *Rivera*. Those cases dealt with the express preemption provision of the Federal Cigarette Labeling and Advertising Act of 1965 (the "Labeling Act"), as amended by the Public

Health Cigarette Smoking Act of 1969, which requires warnings on cigarette packages. It is noteworthy, however, that even when addressing the express preemption provision of the Labeling Act, the courts have not found all state law claims and regulations to be preempted.

For example, in *Boerner*, the Eighth Circuit rejected the tobacco company's argument that the plaintiff's state design defect claim was preempted by the Labeling Act. 394 F.3d at 599-600. The court relied on the express language of the Labeling Act, which indicated Congress' intent to preempt only smoking-related laws " 'concerning the advertising or promotion of cigarettes,' " and reasoned that the Act "is silent on the question of preemption of other state law causes of action." *Id.* at 600 (quoting *Jones v. Vilsack*, 272 F.3d 1030, 1034 (8th Cir. 2001)). "Because 'Congress' enactment of a provision defining the preemptive reach of a statute implies that matters beyond that reach are not pre-empted,' " the court held that the state law claim was not preempted. *Id.* (quoting *Cipollone*, 505 U.S. at 517); *see also, e.g.*, *Altria*, 129 S. Ct. at 549 (concluding that the Labeling Act did not preempt a state law claim that the tobacco companies' advertising was fraudulent); *Lorillard*, 533 U.S. at 552 (holding that, although the Labeling Act preempts state regulation of cigarette advertising, it "does not foreclose all state regulation of conduct as it relates to the sale or use of cigarettes"); *Cipollone*, 505 U.S. at 519-20 (holding that the Labeling Act "only pre-empted state and federal rulemaking bodies from mandating particular cautionary statements and did not pre-empt state-law damages actions"); *Rivera*, 395 F.3d at 1148 (holding that a strict liability failure-to-warn claim was not preempted by the Labeling Act).

The Altria defendants' argument that Hunter's claim against ACC is impliedly preempted relies solely on the principle expressed in *FDA* that Congress has foreclosed the removal of tobacco products from the market. In reaching this conclusion, the Supreme Court reasoned that "Congress has

directly addressed the problem of tobacco and health through legislation on six occasions since 1965,"[3] and that Congress enacted the statutes despite the fact that "the adverse health consequences of tobacco use were well known." *FDA*, 529 U.S. at 137-38. The Court explained that Congress had regulated the labeling and advertisement of tobacco products, while simultaneously expressing the policy of protecting "commerce and the national economy." *Id.* at 138-39.

Appellees argue that *FDA*'s core holding should be expanded based on *Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000), in which the Supreme Court found that a state common-law tort action was preempted by a safety standard promulgated by the Department of Transportation under the authority of a federal statute. *Id.* at 886. *Geier*, however, is distinguishable.

The tort action in *Geier* relied on a claim that manufacturers had a duty to install an airbag in a car. *Id.* at 881. The federal regulation, however, "deliberately sought variety — a mix of several different passive restraint systems." *Id.* at 878. The state law claim, which would have required manufacturers to install airbags, therefore "would have presented an obstacle to the variety and mix of devices that the federal regulation sought." *Id.* at 881.

---

[3]The Court listed six statutes aimed at regulating tobacco. In addition to the 1965 Labeling Act and the Public Health Cigarette Smoking Act of 1969, Congress enacted the Alcohol and Drug Abuse Amendments of 1983, Pub. L. No. 98-24, 97 Stat. 175 (expressing the policy to reduce alcohol and drug abuse); the Comprehensive Smoking Education Act, Pub. L. No. 98-474, 98 Stat. 2200 (addressing labeling requirements for cigarettes); the Comprehensive Smokeless Tobacco Health Education Act of 1986, Pub. L. No. 99-252, 100 Stat. 30 (providing for public education regarding smokeless tobacco products); and the Alcohol, Drug Abuse, and Mental Health Administration Reorganization Act, Pub. L. No. 102-321, 106 Stat. 323 (addressing, *inter alia*, the use of tobacco products by minors). *See FDA*, 529 U.S. at 137-38.

**[12]** Unlike *Geier*, in which the state law claim would have imposed a duty that directly contradicted a federal regulation, Hunter's claim cannot be said to "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp.*, 514 U.S. at 287 (internal quotation marks omitted). That is, Hunter's product liability claim does not present an obstacle to the congressional policy concerning the regulation of tobacco. In 2004, after the Court decided *FDA*, Congress repealed the provision of the Agricultural Adjustment Act of 1938 that had articulated federal policy in support of the marketing of tobacco. *See* Fair and Equitable Tobacco Reform Act of 2004, Pub. L. No. 108-357, § 611(a); *see also FDA*, 529 U.S. at 137 (quoting the now-repealed provision at length). The remaining regulatory provisions concern labeling, research, and education and do not provide strong evidence of a federal policy against more stringent state regulation. We decline to find preemption "in the absence of clear evidence of a conflict." *Geier*, 529 U.S. at 885; *see also Sprietsma v. Mercury Marine*, 537 U.S. 51, 69 (2002) (concluding that the Federal Boat Safety Act's express preemption clause did not cover state common law claims, and that "its structure and framework do not convey a clear and manifest intent to go even further and implicitly pre-empt all state common law relating to boat manufacture") (internal quotation marks and citation omitted).

**[13]** In sum, the Altria defendants have failed to overcome the presumption against removal because Hunter's complaint does not indicate that she has obviously failed to state a claim against ACC. Accordingly, the district court erred in concluding that ACC was fraudulently joined. The Altria defendants further have failed to establish a clear conflict between Hunter's claim and federal law. Implied preemption therefore does not apply. Because ACC was not fraudulently joined, there was no complete diversity of citizenship, and the case should have been remanded to the state court. Appellants shall recover their costs on appeal from Appellees.

**[14]** For the foregoing reasons, the judgment of the district court is vacated and the case is remanded with instructions that the case be remanded to state court.

**VACATED and REMANDED with instructions.**