**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GRANCARE, LLC, DBA Vale
Healthcare Center; MARINER
HEALTH CARE, INC.,
*Defendants-Appellants*,

v.

RUTH THROWER, by and
through her Successor in
Interest, Rosie Lee Mills;
ROSIE LEE MILLS; HELEN
MILLS; LORETTA EDDINGS;
LASHAWN THROWER; PERRY
JOHNSON, JR.; ELLEN MASON,
*Plaintiffs-Appellees*.

No. 16-15533

D.C. Nos.
3:15-cv-05362-WHA
3:15-cv-05575-WHA

OPINION

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted October 18, 2017
San Francisco, California

Filed April 26, 2018

Before:  Michael Daly Hawkins, William A. Fletcher,
and Richard C. Tallman, Circuit Judges.

Opinion by Judge W. Fletcher

# SUMMARY[*]

## Remand / Removal

The panel affirmed the district court's order remanding a case that GranCare LLC had removed to federal court and awarding costs and attorney's fees pursuant to 28 U.S.C. § 1447(c), after finding that GranCare administrator Remy Rhodes was not fraudulently joined as a party in order to defeat diversity and that removal to federal court was objectively unreasonable.

The heirs of Ruth Thrower filed suit in California state court, naming as defendants GranCare, and a GranCare administrator, Remy Rhoades. GranCare removed to federal court even though the named parties were not completely diverse. The district court granted Thrower's heirs' motion to remand, and awarded them costs and attorneys' fees.

The panel first addressed GranCare's argument that the award was improper because the district court's remand order was legally incorrect. The panel rejected GranCare's argument that the district court applied an incorrect standard for fraudulent joinder. The panel held that the fraudulent joinder standard shared some similarities with the analysis under Fed. R. Civ. P. 12(b)(6), but the tests for fraudulent joinder and failure to state a claim were not equivalent. The panel further held that if a plaintiff's complaint could withstand a Rule 12(b)(6) motion with respect to a particular defendant, that defendant had not been fraudulently joined;

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

but the reverse was not true, and if a defendant could not withstand a Rule 12(b)(6) motion, the fraudulent joinder inquiry did not end there. The panel concluded that Thrower's heirs had shown a possibility of recovery against Rhodes. Specifically, the panel held that Thrower's heirs had shown a colorable claim against Rhodes under California's Elder Abuse and Dependent Adult Civil Protection Act, as well as a colorable negligence per se claim.

The panel next addressed GranCare's argument that even if incorrect, removal was objectively reasonable, and the award was improper. Costs and attorneys' fees may be awarded against GranCare if its decision to remove was objectively unreasonable. The panel held that GranCare's reliance on a district court's order in *Johnson v. GranCare LLC*, No. 15-CV-03585-RS, 2015 WL 6865876 (N.D. Cal. Nov. 9, 2015) (determining that Rhodes was a fraudulently joined defendant), was unreasonable due to clear factual distinctions between the cases. The panel held that, unlike the complaint in *Johnson*, the complaint in this case contained detailed allegations against Rhodes, and it was obvious that GranCare would not have been entitled to removal in this case even if the *Johnson* standard had been applied.

The panel concluded that the district court's award of costs and attorneys' fees was not premised on an erroneous view of the law or a clearly erroneous assessment of the evidence.

## COUNSEL

Ben Ogletree (argued), Verdi & Ogletree PLLC, Washington, D.C., for Defendants-Appellants.

David M. Medby (argued), Mark A. Schadrack, and Stephen M. Garcia, Garcia Artigliere & Medby, Long Beach, California, for Plaintiffs-Appellees.

## OPINION

W. FLETCHER, Circuit Judge:

Defendant-Appellant GranCare LLC ("GranCare") removed a diversity case to federal court, arguing that the sole non-diverse defendant, nursing home administrator Remy Rhodes, was fraudulently joined as a defendant in order to defeat diversity and prevent removal. The district court remanded the case and awarded costs and attorney's fees to Plaintiffs pursuant to 28 U.S.C. § 1447(c) after finding that Rhodes was not fraudulently joined and that removal was objectively unreasonable. GranCare appeals the award, arguing that the district court applied an improper standard for fraudulent joinder and that removal was objectively reasonable. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

### I. Factual and Procedural Background

Ruth Thrower died on July 30, 2015, after a stay at a nursing facility operated by GranCare LLC. On September 14, 2015, Thrower's estate and her successors ("Thrower's heirs") filed suit in California state court naming as

defendants, among others, GranCare and a GranCare administrator, Remy Rhodes. The complaint alleged that Thrower suffered a fall while residing at the facility, which could have been prevented by the adoption of an adequate care plan, and that GranCare staff delayed before sending Thrower to a hospital for treatment. The complaint alleged claims under California law against all defendants for elder abuse, negligence, negligent hiring and supervision, and wrongful death, and an additional claim against GranCare only for fraud.

On December 7, 2015, defendants removed to federal court, even though the named parties are not completely diverse. Thrower's heirs and defendant Rhodes are all California citizens. The remaining defendants contended that Rhodes is a sham defendant who was fraudulently joined to the lawsuit for the purpose of defeating diversity. They also contended that the complaint was "devoid of allegations that Defendant Rhodes herself committed any specific wrongdoing" and failed to "ascrib[e] any particular act or omission by Rhodes." Finally, they contended that Rhodes, as a non-clinician administrator, owed no duty of care to Thrower under California law.

Defendants relied on a district court order in *Johnson v. Grancare LLC*, No. 15-CV-03585-RS, 2015 WL 6865876 (N.D. Cal. Nov. 9, 2015) as supporting removal. In *Johnson*, the heirs of a different resident who died at a GranCare facility sued the same set of defendants in California state court for elder abuse. *Id.* at *1. As in this case, defendants removed to federal court on the basis of diversity, asserting that Rhodes had been fraudulently joined. *Id.* The district court in *Johnson* concluded that "[t]he standard for determining whether a defendant is fraudulently joined is

similar to that of a 12(b)(6) motion to dismiss." *Id.* at 2. Under that standard, the court held that the complaint failed to plead viable claims against Rhodes and denied plaintiffs' motion to remand. GranCare argued in the district court that the reasoning and result in the *Johnson* order compelled the same outcome in this case because plaintiffs "[did] not plead a viable cause of action against Rhodes." At a hearing in this case, GranCare conceded that there was "some possibility, if plaintiff[s] properly pleaded such," that Thrower's heirs could state a cause of action against Rhodes, but GranCare emphasized that the complaint contained "no allegations" against her.

The district court granted plaintiffs' motion to remand. In the court's view, *Johnson* improperly conflated the test for fraudulent joinder with the test under Rule 12(b)(6). The court observed that no appellate decision has "explicitly established how [the] standard [for fraudulent joinder] interacts with the 'plausibility' standard used in evaluating motions to dismiss under Rule 12(b)(6)," but concluded that fraudulent joinder should not be found if there is "any possibility" that a plaintiff could state a claim against the defendant, even if the complaint actually fails to state a claim. Applying this standard, the district court remanded. The district court granted plaintiffs' request for costs and attorney's fees after finding that removal was "patently unreasonable."

GranCare now appeals the award of costs and attorney's fees.

## II. Standard of Review

We review an award of costs and attorney's fees under 28 U.S.C. § 1447(c) for abuse of discretion. *Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 447 (9th Cir. 1992). We will reverse a district court decision only if it is premised on "clearly erroneous findings of fact or erroneous determinations of law." *Dahl v. Rosenfeld*, 316 F.3d 1074, 1077 (9th Cir. 2003).

## III. Discussion

GranCare makes two arguments on appeal. First, it argues that the award is improper because the district court's remand order is legally incorrect. Second, it argues that, even if incorrect, removal was objectively reasonable. We address each argument in turn.

## A. Remand Order

While an order remanding a case for lack of subject matter jurisdiction is unreviewable under 28 U.S.C. § 1447(d), we may consider the merits of a remand order when determining whether an award that flows from that order is proper. *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1105 (9th Cir. 2000).

A defendant may remove "any civil action brought in a State court of which the district courts . . . have original jurisdiction." 28 U.S.C. § 1441(a). Diversity removal requires complete diversity, meaning that each plaintiff must be of a different citizenship from each defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). In determining whether there is complete diversity, district courts may disregard the

citizenship of a non-diverse defendant who has been fraudulently joined. *Chesapeake & Ohio Ry. Co. v. Cockerell*, 232 U.S. 146, 152 (1914).

There are two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting *Smallwood v. Illinois Cent. RR. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)). Fraudulent joinder is established the second way if a defendant shows that an "individual[] joined in the action cannot be liable on any theory." *Ritchey v. Upjohn Drug Co*, 139 F.3d 1313, 1318 (9th Cir. 1998). But "if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Hunter*, 582 F.3d at 1046 (quoting *Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) (per curiam)) (emphasis added). A defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a "heavy burden" since there is a "general presumption against [finding] fraudulent joinder." *Id*. (citations omitted).

We have upheld rulings of fraudulent joinder where a defendant demonstrates that a plaintiff is barred by the statute of limitations from bringing claims against that defendant. *See Ritchey*, 139 F.3d at 1320; *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). We have also upheld such rulings where a defendant presents extraordinarily strong evidence or arguments that a plaintiff could not possibly prevail on her claims against the allegedly fraudulently joined defendant. *See McCabe v. Gen. Foods*

*Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (defendant's conduct was privileged under state law); *United Comput. Sys. Inc. v. AT&T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002) (plaintiff's claims against alleged sham defendant were all predicated on a contract to which the defendant was not a party); *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426–27 (9th Cir. 1989) (same). We have declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal. *See Hunter*, 582 F.3d at 1046 (holding that an implied preemption affirmative defense was not a permissible ground for finding fraudulent joinder).

GranCare argues that the district court in this case applied an incorrect standard for fraudulent joinder. Specifically, it argues that the district court's standard incorrectly requires a removing party to show that there is no possibility that the plaintiff could demonstrate a viable claim against the allegedly fraudulently joined defendant. GranCare argues that the correct standard is close to that of a Rule 12(b)(6) motion to dismiss, as applied by the district court in *Johnson*. We disagree.

We agree with GranCare's contention that the fraudulent joinder standard shares some similarities with the analysis under Rule 12(b)(6). Both require some assessment of the plaintiff's lawsuit. Indeed, we have previously framed the test in terms of an "obvious" failure to state a claim. *See McCabe*, 811 F.2d at 1339 (holding that fraudulent joinder is established when a plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state[.]"). And while the party seeking removal is entitled to present additional facts

that demonstrate that a defendant has been fraudulently joined, *Ritchey*, 139 F.3d at 1318, in many cases, the complaint will be the most helpful guide in determining whether a defendant has been fraudulently joined, *see McCabe*, 811 F.2d at 1339.

But the test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent. A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined. We emphasized in *Hunter* that a federal court must find that a defendant was properly joined and remand the case to state court if there is a "*possibilit*y that a state court would find that the complaint states a cause of action against any of the [non-diverse] defendants." *Hunter*, 582 F.3d at 1046 (emphasis added) (internal quotations and citation omitted) (quoting *Tillman*, 340 F.2d at 1279). This standard accords with that adopted by a majority of our sister circuits. *See Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851–52 (3d Cir. 1992) (noting that "a possibility" of a claim precludes fraudulent joinder); *Hartley v. CSX Transp.; Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) ("no possibility" standard); *Travis v. Irby*, 326 F.3d 644, 647–49 (5th Cir. 2003) (defendant must show "the absence of any possibility" of recovery) (internal quotation marks omitted); *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009) ("[T]he district court must ask whether there is 'any reasonable possibility' that the plaintiff could prevail against the non-diverse defendant."); *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445–46 (8th Cir. 2010) (defendant must establish that there is no "colorable claim" against the alleged sham defendant); *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332–33 (11th Cir. 2011) ("no possibility" standard).

A standard that equates fraudulent joinder with Rule 12(b)(6) conflates a jurisdictional inquiry with an adjudication on the merits. Because the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction, the standard is similar to the "wholly insubstantial and frivolous" standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction. *Bell v. Hood*, 327 U.S. 678, 682–83 (1946); *Franklin v. Murphy*, 745 F.2d 1221, 1227 n.6 (9th Cir. 1984) ("A paid complaint that is 'obviously frivolous' does not confer federal subject matter jurisdiction."). The relative stringency of the standard accords with the presumption against removal jurisdiction, under which we "strictly construe the removal statute," and reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam).

We articulated this standard most recently in *Weeping Hollow Avenue Trust v. Spencer*, 831 F.3d 1110 (9th Cir. 2016). In *Weeping Hollow*, an organization that had purchased property at a foreclosure sale filed a quiet title action, naming among others the former homeowner, Spencer, as a defendant. *Id.* at 1111. Another defendant removed the case to federal court. *Id.* It argued that Spencer had been fraudulently joined because the foreclosure sale had extinguished any interest she had in the property. *Id.* We held that Spencer had not been fraudulently joined because she retained the ability to challenge the foreclosure on equitable grounds of "fraud, unfairness or oppression." *Id.* at 1113–14 (citation and quotation omitted).

GranCare cites *Sessions v. Chrysler Corp.*, 517 F.2d 759 (9th Cir. 1975), in support of its argument that the test for

fraudulent joinder is roughly equivalent to the test under Rule 12(b)(6). In *Sessions*, we concluded that because a plaintiff's claims were "sufficient to withstand a dismissal motion under Fed. R. Civ. P. 12(b)(6), the joinder of claims against them was not fraudulent." *Id.* at 761. But our holding in *Sessions* is consistent with the "possibility" standard we follow today. If a plaintiff's complaint can withstand a Rule 12(b)(6) motion with respect to a particular defendant, it necessarily follows that the defendant has not been fraudulently joined. But the reverse is not true. If a defendant cannot withstand a Rule 12(b)(6) motion, the fraudulent inquiry does not end there. For example, the district court must consider, as it did in this case, whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend.

In the case before us, plaintiffs have shown a possibility of recovery against Rhodes. California's Elder Abuse and Dependent Adult Civil Protection Act ("the Act") provides civil penalties for elder abuse. Cal. Welf. & Inst. Code. § 15600, *et seq*. Section 15610.07 of the Act defines elder abuse as including both "neglect" and "[t]he deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering." Neglect includes "[t]he negligent failure of any person having the care or custody of an elder or a dependent adult to exercise the degree of care that a reasonable person in a like position would exercise." *Id.* § 15610.57(a)(1). The Act provides a non-exhaustive list of actions that constitute neglect, including "[f]ailure to provide medical care for physical and mental health needs" and "[f]ailure to protect from health or safety hazards." *Id.* § 15610.57(b)(2)–(3).

To prove a neglect claim under the Act, a plaintiff must establish that: (1) the plaintiff or decedent was over 65, and

therefore an elder within the meaning of the Act; (2) the defendant had "a substantial caretaking or custodial relationship" with the elder; (3) the defendant failed to use due care; (4) the elder was harmed as a result; and (4) the defendant's conduct was a substantial factor in causing the elder's harm. Cal. Welf. & Inst. Code. § 15610.57; Cal. Civ. Jury Instructions § 3103. The Act does not apply to simple or gross negligence by healthcare providers, but requires proof of "reckless, oppressive, fraudulent, or malicious conduct." *Delaney v. Baker*, 20 Cal. 4th 23, 31 (1999).

Plaintiffs allege a colorable claim against Rhodes. The complaint alleges that Rhodes is "the [a]dministrator and managing agent of [GranCare], responsible for the day-to-day operations." The complaint states that Thrower was over 65 "at all relevant times" and therefore was an "elder" as defined in the Act. The complaint further alleges several "failure[s] to protect from health or safety hazards," including allegations that the defendants failed to provide safety and assistance devices to prevent accidents, did not adequately train their staff, and that Rhodes did not conduct adequate screening procedures before admitting Thrower to confirm that the facility was adequately equipped to care for her.

The complaint alleges that Thrower died after she suffered a preventable fall and defendants delayed for over 18 hours before taking her to a hospital. California applies a broad "substantial factor" test for legal causation, and Thrower's heirs need only demonstrate a reasonable possibility that Rhodes's actions played a role in Thrower's death that was not merely "infinitesimal" or "theoretical." *Bockrath v. Aldrich Chem. Co., Inc.*, 21 Cal. 4th 71, 79 (1999). Finally, Rhodes's alleged actions are within the range of conduct determined by California courts to qualify

as reckless neglect.  *See, e.g.*, *Sababin v. Superior Court*, 144 Cal. App. 4th 81, 89–90 (2006) (finding a triable issue on the question of recklessness where a rehabilitation center established, but failed to follow, a care plan that included monitoring a patient's skin and reporting changes to a physician); *Fenimore v. Regents of the Univ. of Cal.*, 245 Cal. App. 4th 1339, 1350 (2016) (holding that systemic understaffing may provide evidence of "recklessness" under the Act).

Plaintiffs also allege a colorable negligence per se claim against Rhodes.  Under California law, a failure to exercise due care is presumed if "(1) [the defendant] violated a statute, ordinance, or regulation of a public entity; (2) [t]he violation proximately caused a death or injury to person or property, (3) [t]he death or injury resulted from an occurrence of the nature that the statute, ordinance, or regulation was designed to prevent; and (4) [t]he person suffering the death or injury . . . was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted."  Cal. Evid. Code § 669(a).  The complaint alleges that Rhodes violated a series of regulations applicable to nursing home administrators, including Cal. Code. Regs § 72513(f).  It specifically alleges that Rhodes violated § 72513(f) by failing to conduct a preadmission personal interview with Thrower's physician, and by failing to update screening assessments. The complaint alleges further that Thrower's fall could have been prevented had Rhodes and GranCare adopted an adequate care plan prior to her arrival, although the precise details are unclear. Finally, the complaint alleged that, as a resident at an elder care facility, Thrower was within the class protected by the regulation.

GranCare has not demonstrated that there is no possibility that Plaintiffs could prevail against Rhodes. GranCare submitted a declaration from Rhodes in which she denied the allegations and emphasized that her role is largely administrative. But a denial, even a sworn denial, of allegations does not prove their falsity, and Rhodes's status as an administrator does not insulate her from liability. *See* Cal. Welf. Inst. & Inst. Code § 15610.17 (including administrators within the statutory definition of "care custodians"); *Delaney*, 20 Cal. 4th at 27–28, 41 (upholding jury verdict finding a nursing home and its administrators liable for the death of a patient).

GranCare also makes a series of arguments to the effect that Plaintiffs have not adequately pleaded their claims against Rhodes, and that the district court did not accord sufficient weight to deficiencies in the complaint. Specifically, GranCare argues that the heirs erred in "lumping" Rhodes with other defendants by alleging misconduct against all defendants collectively, that the heirs did not plead their claims with sufficient particularity, and that the heirs did not sufficiently allege negligence. Because these arguments go to the sufficiency of the complaint, rather than to the possible viability of the heirs' claims against Rhodes, they do not establish fraudulent joinder.

## B. The Reasonableness of Removal

Costs and attorney's fees may be awarded against GranCare if its decision to remove was objectively unreasonable. Absent unusual circumstances, a court may award costs and attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. *Martin v. Franklin Capital Corp.*, 546 U.S.

132, 141 (2005). Removal is not objectively unreasonable "solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008).

GranCare argues that the award of costs and attorney's fees is improper. It contends that it reasonably relied on the order in *Johnson*—in which a district court in the same district determined that Rhodes was a fraudulently joined defendant—in deciding to remove this case. We agree with GranCare that the degree of clarity in the relevant law at the time of removal is a relevant factor in determining whether a defendant's decision to remove was reasonable. *See Lussier*, 518 F.3d at 1063. We are willing to assume, *arguendo*, that at the time of removal, no appellate decision in this circuit had yet clarified the relationship between Rule 12(b)(6) and the standard for fraudulent joinder. Further, we recognize two district courts in the same jurisdiction, faced with our precedents, came to different conclusions as to the governing standard. Without agreeing that *Johnson*'s standard was legally correct, we conclude that GranCare had a reasonable basis for relying on the standard articulated in that case.

However, the district court correctly determined that GranCare's reliance on *Johnson* was unreasonable due to clear factual distinctions between the cases. The *Johnson* complaint identified Rhodes as the nursing home administrator, but did not mention her elsewhere, leaving the basis for plaintiffs' claims entirely unclear. The failure to do anything other than identify Rhodes as the administrator was the primary reason for the *Johnson* court's conclusion that Rhodes had been fraudulently joined. Unlike the complaint in *Johnson*, the complaint in this case contained detailed

allegations against Rhodes, and it is obvious that GranCare would not have been entitled to removal in this case even if the *Johnson* standard had been applied.

## Conclusion

Because the district court's award of costs and attorney's fees was not premised on an erroneous view of the law or a clearly erroneous assessment of the evidence, we affirm.

**AFFIRMED.**