NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 29 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CURTIS ULLESEIT; LISA WEHLMANN, | No. 19-15778 |
| Plaintiffs-Appellees, | D.C. No. 3:17-cv-07026-JD |
| v. | |
| BAYER HEALTHCARE PHARMACEUTICALS INC.; et al., | MEMORANDUM* |
| Defendants-Appellants, | |
| and | |
| BAYER PHARMA AG, FKA Bayer Schering Pharma AG; et al., | |
| Defendants. | |

| | |
|---|---|
| BETH WINKLER, | No. 19-15782 |
| Plaintiff-Appellee, | D.C. No. 3:18-cv-03077-JD |
| v. | |
| BAYER HEALTHCARE PHARMACEUTICALS INC.; et al., | |
| Defendants-Appellants, | |

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

and

MCKESSON CORPORATION;
MCKESSON MEDICAL-SURGICAL INC.,

　　　　　Defendants.

On Remand From the United States Supreme Court

Argued and Submitted December 8, 2021
San Francisco, California

Before:　WATFORD, FRIEDLAND, and MILLER, Circuit Judges.
Dissent by Judge MILLER

　　　Bayer HealthCare Pharmaceuticals Inc., Bayer Corporation, and Bayer Healthcare LLC (collectively, Bayer) appeal from the district court's order remanding five cases to California state court.  We previously affirmed the district court's holding that Bayer did not meet the requirements for federal officer removal.  *Ulleseit v. Bayer HealthCare Pharms. Inc.*, 826 F. App'x 627, 629 (9th Cir. 2020).  Following then-controlling circuit precedent, we declined to review Bayer's other asserted ground for removal.  *Id.* at 628.  The Supreme Court subsequently overturned our prior precedent, holding in a different case that a court of appeals has jurisdiction to review any asserted basis for federal jurisdiction when a defendant properly appeals under 28 U.S.C. § 1447(d) from a remand order.  *BP p.l.c. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532 (2021).  The Court granted Bayer's petition for certiorari, vacated our judgment, and

remanded for further proceedings. *Bayer HealthCare Pharms. Inc. v. Ulleseit*, 142 S. Ct. 57 (2021). We now address Bayer's remaining ground for removal— namely, that diversity jurisdiction exists because the only non-diverse defendants (the distributors of the drug at issue) were fraudulently joined.

**1.** The district court correctly held that Bayer has not carried its "heavy burden" of showing that plaintiffs' state law claims against the distributor defendants are obviously foreclosed by federal preemption principles. *GranCare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018). Our decision in *Hunter v. Philip Morris USA*, 582 F.3d 1039 (9th Cir. 2009), does not categorically bar a defendant from relying on preemption to establish that claims against a non-diverse defendant are wholly insubstantial.[1] But fraudulent joinder can be found only when a summary review of the complaint reveals that the plaintiff has no possibility of prevailing on any claim against the non-diverse defendant. *Id.* at 1046; *GranCare*, 889 F.3d at 548–49.

---

[1] *Hunter* stands for the proposition that, in the "unique situation" when the preemption analysis is identical as to both the non-diverse and diverse defendants, a court may not decide that the non-diverse defendants were fraudulently joined on the basis of preemption, because such a determination would "effectively decide[] the entire case." *Id.* at 1044–45 (quotation marks omitted). In this case, the preemption analysis differs as to the diverse and non-diverse defendants, so *Hunter* does not preclude the possibility that, if the claims against the distributors were obviously preempted, the distributors would have been fraudulently joined.

Bayer contends that this standard is met, citing *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011), as principal support for its preemption argument. That case involved failure-to-warn claims against the manufacturers of generic drugs, not drug distributors. Although there are strong arguments for extending the reasoning of *Mensing* to claims against drug distributors, doing so would require additional analytical work.

In holding that claims against generic drug manufacturers were preempted, the Court in *Mensing* relied in part on a federal regulation stating that only brand-name drug manufacturers are permitted to alter their drugs' approved labeling. *See id.* at 614 (citing 21 C.F.R. § 314.70(c)(6)(iii)). But that regulation did not give rise to the federal law duty that the Court concluded generic drug manufacturers would be forced to violate if they attempted to comply with state law. In concluding that the generic drug manufacturers *would* necessarily violate federal law, the Court pointed to regulations requiring them to keep their labels "the same" as the labels of the corresponding brand-name drug. *See id.* at 613–14 (citing 21 C.F.R. § 314.94(a)(8)(iv)). Bayer has not identified any equivalent regulation governing drug distributors, and it is likely that an analysis of federal law prohibitions on "misbranding" would be necessary to establish that plaintiffs' state law failure-to-warn claims are subject to impossibility preemption. *See* 21 U.S.C. §§ 331(a), 352. The need for that additional layer of analysis exceeds what is

permissible in this procedural posture. *See Hunter*, 582 F.3d at 1044 ("[T]he inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden.") (quotation marks omitted).

**2.** The district court correctly rejected Bayer's second argument for finding fraudulent joinder. Our case law provides just two ways to establish fraudulent joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party. *GranCare*, 889 F.3d at 548; *Hunter*, 582 F.3d at 1044. Bayer asks us to consider a third possibility. It contends that objective evidence shows that plaintiffs do not intend to pursue a judgment against the distributor defendants. Bayer has not identified any case in this circuit permitting a finding of fraudulent joinder on that basis, and the limited authority we do have suggests that Bayer's asserted third basis for finding fraudulent joinder is not valid. *See Smith v. S. Pac. Co.*, 187 F.2d 397, 400 (9th Cir. 1951) (noting that, if the complaint's allegations establish a potentially meritorious claim, the plaintiff's "motive in joining the individual defendant is not fraudulent even if the sole reason for joinder is to prevent removal").

**AFFIRMED.**

*Ulleseit v. Bayer Corp.*, No. 19-15778+

MILLER, Circuit Judge, dissenting:

Bayer is entitled to remove this case to federal court because complete diversity exists among all parties who have been properly joined. Although Bayer's co-defendant, McKesson, is not diverse from the plaintiffs, "courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined," and McKesson was fraudulently joined because it "'cannot be liable on any theory.'" *GranCare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)).

Plaintiffs allege that they were injured by using a drug that was manufactured by Bayer and distributed by McKesson. They claim, in particular, that Bayer and McKesson failed to warn them of the drug's dangers. But any warning that either Bayer or McKesson might have provided would have been part of what federal law considers to be the drug's "labeling." 21 C.F.R. § 202.1(*l*)(2) (defining "labeling" to include any "printed, audio, or visual matter descriptive of a drug . . . supplied by the manufacturer, packer, or distributor of the drug"). FDA regulations make clear that only the drug's manufacturer—the "applicant" for FDA approval—may change the labeling. *See id.* § 314.70 (permitting post-approval changes to a drug's labeling only by the drug's "applicant"); *id.* § 314.3 (defining "applicant"); *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 614–15 (2011). McKesson is

1

not the drug's applicant—Bayer is. Because federal law prohibits distributors like McKesson from changing the drug's labeling, a state tort law that imposes a duty on McKesson to modify the labeling is preempted. *See PLIVA*, 564 U.S. at 618 (holding that failure-to-warn claims against generic drug manufacturers are preempted because generic drug manufacturers, unlike brand-name manufacturers, cannot alter a drug's labeling). It follows that McKesson "cannot be liable" to plaintiffs. *GranCare*, 889 F.3d at 548 (quoting *Ritchey*, 139 F.3d at 1318).

To be sure, fraudulent joinder is a demanding standard, one that we have described as "similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction." *GranCare*, 889 F.3d at 549 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)). If plaintiffs had articulated any colorable theory of McKesson's liability, that would have been enough to defeat Bayer's claim of fraudulent joinder. But confronted with an argument that their claims against McKesson are preempted, plaintiffs have responded with . . . nothing. They have not suggested that their claims against McKesson rest on anything other than McKesson's failure to change the drug's labeling. They have not argued that federal law would have allowed McKesson to change the drug's labeling. And when asked at oral argument what McKesson could have done to avoid liability without violating federal law, plaintiffs' only answer was that it should simply have stopped distributing the

2

drug—a theory that is squarely foreclosed by Supreme Court precedent. *Mutual Pharm. Co. v. Bartlett,* 570 U.S. 472, 488–90 (2013).

Whatever analytical work may be necessary to conclude that plaintiffs' claims are preempted, it is not work that anyone should find unduly taxing. Because plaintiffs can offer no explanation of how their claims against McKesson might avoid preemption, I would reverse the district court's remand order and allow this case to proceed in federal court.