**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| KAREN HANSEN, on her own behalf and on behalf of other similarly situated persons; BETTE JORAM, on her own behalf and on behalf of other similarly situated persons,<br>*Plaintiffs-Appellants*, | No. 16-35684<br><br>D.C. No.<br>2:15-cv-01436-RAJ |
| v. | OPINION |
| GROUP HEALTH COOPERATIVE,<br>*Defendant-Appellee.* | |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted May 11, 2018
Seattle, Washington

Filed September 4, 2018

Before: Ronald M. Gould and Sandra S. Ikuta, Circuit
Judges, and John R. Tunheim,[*] Chief District Judge.

Opinion by Judge Gould

---

[*] The Honorable John R. Tunheim, Chief United States District
Judge for the District of Minnesota, sitting by designation.

## SUMMARY[**]

### ERISA Preemption

The panel reversed the district court's exercise of subject matter jurisdiction in dismissing state law claims brought by mental health providers against an insurance company, and remanded for the entirety of the dispute to be returned to the state court from which it had been removed.

The mental health providers filed a class action complaint in state court, alleging violation of the Washington Consumer Protection Act in defendant's use of certain screening criteria for mental healthcare coverage. Defendant removed the case to federal court on the ground that the providers had been assigned benefits by patients who were insured under health plans governed by the Employee Retirement Income Security Act, which, defendant asserted, therefore completely preempted the providers' claims. The district court dismissed in part, concluding that the providers' claims were subject to conflict and express preemption to the extent that they concerned defendant's business practices in administering ERISA plans. The district court declined to exercise supplemental jurisdiction over the providers' claims as to defendant's administration of non-ERISA plans, and it remanded that part of the case to Washington state court.

The panel held that the providers' claims did not fall within the scope of, and so were not completely preempted

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

by, ERISA section 502(a)(1)(B). There was no dispute that the providers' claim for wrongfully licensing allegedly biased mental health coverage guidelines was based on an independent duty to refrain from engaging in unfair and deceptive business practices. The panel held that there also was not complete preemption of a claim that defendant used its treatment guidelines to avoid complying with Washington's Mental Health Parity Act, or of a claim that defendant unfairly competed in the marketplace by discouraging its patients from seeking treatment by rival practitioners. The panel concluded that all three of the providers' claims for unfair and deceptive business practices were based on independent duties beyond those imposed by their patients' ERISA plans.

The panel reversed the district court's exercise of subject matter jurisdiction in dismissing the providers' claims, and it remanded with instructions for the district court to return the entirety of the action to the Washington state court.

---

### COUNSEL

Albert H. Kirby (argued), Sound Justice Law Group PLLC, Seattle, Washington, for Plaintiffs-Appellants.

James Derek Little (argued) and Medora A. Marisseau, Seattle, Washington, for Defendant-Appellee.

---

**OPINION**

GOULD, Circuit Judge:

Three years ago, a pair of Washington residents sued a Washington-based company under Washington law in a Washington court. The company responded by removing the case to federal court under the so-called "complete preemption" doctrine. The district court exercised jurisdiction, dismissed some of the claims, and remanded the remainder to state court. We reverse and remand for the entirety of this dispute to be returned to state court.

**I**

Karen Hansen and Bette Joram are mental health providers who live and work in Washington (collectively, "Providers"). Group Health Cooperative ("GHC"), now known as Kaiser Foundation Health Plan of Washington, is a health insurance company with its principal place of business in Washington.

In August 2015, the Providers filed a class action complaint against GHC in a Washington state superior court. According to the complaint, in January 2007 GHC adopted screening criteria for mental healthcare coverage called the Milliman Care Guidelines. GHC allegedly uses these guidelines as the "primary criteria" for authorizing psychotherapy treatment.

The Providers claim that GHC's use of the Milliman Care Guidelines has injured their practices in violation of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020. That statute makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.*

Three of the Providers' allegations are at issue in this appeal. First, the Providers allege that GHC's licensing of the guidelines is inherently unfair and deceptive because the treatment guidance is biased against mental healthcare. Second, the Providers allege that GHC deceptively uses the guidelines to avoid paying for mental healthcare coverage required by Washington's Mental Health Parity Act, Wash. Rev. Code § 48.44.341. And third, the Providers assert that GHC unfairly competes by employing its own psychotherapists who strictly adhere to the guidelines and by discouraging patients from seeking treatment from therapists who do not work for the company. The Providers bring this lawsuit on behalf of themselves and all Washington psychotherapists who are not employed by GHC.

In September 2015, GHC removed this case to federal court. GHC determined that Hansen and Joram had been assigned benefits by three of their patients who were insured under employer-sponsored health plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). The patients made these assignments so that their therapists could appeal adverse benefit determinations on their behalf. GHC argued that the benefit assignments caused the Providers' claims to be completely preempted by ERISA, meaning there was subject matter jurisdiction in federal court.

A month later, the Providers moved to remand the case to state court, while GHC moved to dismiss the complaint. In a consolidated order, the district court denied the motion to remand and granted the motion to dismiss in part, concluding that the Providers' claims were subject to conflict and express preemption to the extent that they concerned GHC's business practices in administering ERISA plans. The court then declined to exercise

supplemental jurisdiction over the Providers' claims as to GHC's administration of non-ERISA plans, and remanded that part of the case back to Washington state court. The Providers appeal.

## II

### A

In our federal system, the States possess sovereignty concurrent with that of the Federal Government, limited only by the Supremacy Clause. *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). State courts enjoy a "deeply rooted presumption" that they have jurisdiction to adjudicate all claims arising under state or federal law. *See id.* at 459.

By contrast, "[w]e presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (citation omitted). Federal courts are courts of limited jurisdiction and, as such, cannot exercise jurisdiction without constitutional and statutory authorization. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The great majority of federal cases involve just two bases for jurisdiction. First, both Article III and 28 U.S.C. § 1331 provide federal courts jurisdiction over all cases "arising under" federal law. And second, Article III and 28 U.S.C. § 1332 together confer jurisdiction over certain cases involving citizens of different states.

A plaintiff is the master of the plaintiff's complaint, and has the choice of pleading claims for relief under state or federal law (or both). *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987). If these claims do not involve federal law or diverse parties, the action can be brought only in state

court.  *See id.*  On the other hand, if these claims give rise to concurrent jurisdiction, the plaintiff may choose to file in either state or federal court.  But if the plaintiff elects state court, the defendant then has the option of removing the case from state court to federal court under the general removal statute, 28 U.S.C. § 1441.  The upshot is that, in the absence of diversity jurisdiction, "the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court,"  *Caterpillar*, 482 U.S. at 399, under most circumstances.

Given our constitutional role as a limited tribunal and our "[d]ue regard for the rightful independence of state governments," *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (citation omitted), "we strictly construe the removal statute against removal jurisdiction." *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)).  We must exercise "prudence and restraint" when assessing the propriety of removal because "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 810 (1986).  If a district court determines at any time that less than a preponderance of the evidence supports the right of removal, it must remand the action to the state court.  *See Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010); *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004).  The removing defendant bears the burden of overcoming the "strong presumption against removal jurisdiction." *Geographic Expeditions*, 599 F.3d at 1107 (citation omitted).

**B**

Removal based on federal-question jurisdiction is reviewed under the longstanding well-pleaded complaint rule. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908). This rule provides that an action "aris[es] under" federal law "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392. As a result, "a defendant cannot remove on the basis of a federal defense." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 478 (1998).

But a corollary to the well-pleaded complaint rule is the artful pleading doctrine. Under that doctrine, "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Id.* at 475 (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983)).

The most common way that federal questions are disguised as matters of state law involves what is known as the "complete preemption" doctrine. 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3722.1 (4th ed. 2018). Complete preemption refers to the situation in which federal law not only preempts a state-law cause of action, but also substitutes an exclusive federal cause of action in its place. *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003); *see also Schmeling v. NORDAM*, 97 F.3d 1336, 1343 (10th Cir. 1996) ("[R]emoval based on preemption is permissible only if federal law provides a replacement cause of action."). We have observed that complete preemption is "rare." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 947 (9th Cir. 2014); *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Mont.*, 213 F.3d 1108, 1114 (9th Cir. 2000). Other circuits

unanimously agree.  *See, e.g.*, *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1189 (8th Cir. 2015); *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 360 n.9 (6th Cir. 2015); *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013); *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1261 n.16 (11th Cir. 2011).

It stands to reason that "if a federal cause of action completely preempts a state cause of action[,] any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Bd.*, 463 U.S. at 24.  The doctrine thus aims "to prevent a plaintiff from avoiding a federal forum when Congress has created a federal cause of action with the intent that it provide the exclusive remedy for the particular grievance alleged by the plaintiff."  Arthur R. Miller, *Artful Pleading: A Doctrine in Search of Definition*, 76 Tex. L. Rev. 1781, 1785 (1998).

Once completely preempted, a state-law claim ceases to exist.  *See Beneficial Nat. Bank*, 539 U.S. at 11.  But that does not mean the plaintiff has no claim at all.  Instead, the state-law claim is simply "recharacterized" as the federal claim that Congress made exclusive.  *Vaden v. Discover Bank*, 556 U.S. 49, 61 (2009).  The district court must either treat the artfully pleaded claim for all purposes as the correct federal claim, or else dismiss it with leave to formally replead the claim under federal law.  *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 292 (4th Cir. 2003); *see also, e.g.*, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987) ("[A]ll suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans [are to] be treated as federal questions governed by § 502(a)."); *Crull v. GEM Ins. Co.*, 58 F.3d 1386, 1391–92 (9th Cir. 1995) (remanding for the district court to "take[] up the question of relief under ERISA's civil

enforcement scheme" after concluding that the state-law claims are completely preempted).

The seminal complete preemption case is *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968). There, a company sued a union in state court, styling its claim for breach of their collective bargaining agreement as a breach of contract under state law. *See id.* at 558. The union then removed the case to federal court on the ground that federal law governs a complaint for breach of a collective bargaining agreement. *Id.* The federal court exercised jurisdiction, and the Supreme Court affirmed. *See id.* at 560. *Avco*'s reasoning was opaque, but as the Court later explained, removal was proper because the company's breach of contract claim "really" arose under section 301 of the Labor Management Relations Act. *Franchise Tax Bd.*, 463 U.S. at 23. That statute's "preemptive force" is "so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Id.* (quoting 29 U.S.C. § 185(a)).

Equally powerful is ERISA's primary civil enforcement provision, section 502(a). *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66 (1987). That section provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). As the Supreme Court elaborated in *Aetna Health Inc. v. Davila*, "[i]f a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit [under section 502(a)(1)(B)] seeking provision of those benefits." 542 U.S. 200, 210 (2004). "A participant or beneficiary can also bring suit generically to 'enforce his

rights' under the plan, or to clarify any of his rights to future benefits." *Id.* "Any dispute over the precise terms of the plan is resolved by a court under a *de novo* review standard, unless the terms of the plan 'giv[e] the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Id.* (citation omitted).

In *Davila*, the Supreme Court faced the question whether ERISA section 502(a)(1)(B) completely preempts suits by individuals against their health maintenance organizations for "alleged failures to exercise ordinary care in the handling of coverage decisions, in violation of a duty imposed by the Texas Health Care Liability Act (THCLA)." *Id.* at 204. THCLA imposed a duty on managed care entities to "exercise ordinary care when making health care treatment decisions." *Id.* at 212 (quoting Tex. Civ. Prac. & Rem. Code § 88.002(a)). But that duty created "no obligation . . . to provide to an insured or enrollee treatment which is not covered by the health care plan of the entity." *Id.* (quoting Tex. Civ. Prac. & Rem. Code § 88.002(d)). The plaintiffs in that case brought suit under THCLA solely to remedy the denial of benefits under their ERISA-regulated benefit plans. *Id.* at 211. As a result, the Supreme Court concluded that the plaintiffs could have sought reimbursement for the desired treatment through a section 502(a)(1)(B) action, *id.*, and that their claims "derive[d] entirely from the particular rights and obligations established by the benefit plans," *id.* at 213. The Court held that this state-law cause of action fell "within the scope of," and was thus completely preempted by, ERISA section 502(a)(1)(B). *Id.* at 214 (quoting *Metro. Life*, 481 U.S. at 66).

*Davila* sets forth a two-prong test for determining whether a state-law claim is completely preempted by

ERISA's civil enforcement provision. Under that test, a state-law cause of action is completely preempted if (1) the plaintiff, "at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B)," and (2) "there is no other independent legal duty that is implicated by [the] defendant's actions." *Id.* at 210. We note that this test from *Davila* is conjunctive, and both elements need to be met to show complete preemption. To show removal jurisdiction on the basis of complete preemption, a defendant must cite to the complaint, the state statute on which the claim is based, and the plan documents. *Id.* at 211.

## III

The district court concluded that both prongs of the *Davila* test were met here. We review *de novo* this conclusion because it goes to the court's subject matter jurisdiction. *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009).

We need not decide if *Davila*'s first prong is met, because federal court jurisdiction is lacking if either of these interrelated prongs is not satisfied, and *Davila*'s second prong, in our view, is readily shown to be unmet. *See id.* at 947.

The controlling question for us under *Davila* is whether a claim relies on the violation of a legal duty that arises independently of the plaintiff's, or their assignor's, ERISA plan. *See* 542 U.S. at 210. "If there is some other independent legal duty beyond that imposed by an ERISA plan, a claim based on that duty is not completely preempted under § 502(a)(1)(B)." *Marin Gen. Hosp.*, 581 F.3d at 949.

There is no dispute that the Providers' claim for wrongfully licensing allegedly biased mental health

coverage guidelines is based on an independent duty to refrain from engaging in unfair and deceptive business practices. *See* Wash. Rev. Code § 19.86.020.

The first claim at issue rests on the allegation that GHC uses its treatment guidelines to avoid complying with Washington's Mental Health Parity Act.  That statute generally requires health benefit plans to treat medical services and "medically necessary" mental health services alike. *See id.* § 48.44.341(1)–(2).

According to GHC, assessing whether a health insurance company violates this duty requires interpreting how the patient-assignors' benefit plans define the term "medically necessary."  That is incorrect; the statutory duty exists apart from a plan's defined terms, even if a plan happens to use the same language.  And while a plan may define "medically necessary" differently from the Washington statute, that has no bearing on the contours of the statutory duty.

GHC also contends that the statutory duty is not independent because it relies on the existence of a health benefit plan in the first place.  The relevant inquiry, however, focuses on the *origin* of the duty, not its relationship with health plans. *See Marin Gen. Hosp.*, 581 F.3d at 949.  The state laws at issue in *Davila*, for example, did not impose an independent legal duty to provide benefits because they excluded treatments not covered by a plan's terms.  542 U.S. at 212–13.  As a result, the denials of treatment in that case turned on the terms of the specific health plans, not the requirements of state law. *Id.*  By contrast, Washington's Mental Health Parity Act does impose an independent coverage requirement, mandating that health plans for medical and surgical care cover mental health treatment as well. *See O.S.T. ex rel. G.T. v. BlueShield*, 335 P.3d 416, 420 (Wash. 2014).  If the terms of a plan exclude this

treatment, they may violate the state law. *See id.* This statutory duty is unlike those in *Davila* because it does not piggyback on, and is thus independent of, the specific rights "established by the benefit plans." 542 U.S. at 213. In *Davila*, the state law applied only when a benefit plan covered treatment, while here the state law applies to how all benefit plans cover mental health treatment.

The next claim at issue is the Providers' contention that GHC unfairly competes in the marketplace by discouraging its patients from seeking treatment by rival practitioners.

GHC argues that it has no duty to "encourage" patients to seek care elsewhere, but that misses the point. Any duty for GHC to refrain from unfairly harming its competitors arises under state law, not under the terms of an ERISA plan. Indeed, because this claim concerns GHC's actions as an employer of psychotherapists, this claim could exist whether or not GHC administered any health benefit plans at all, let alone any ERISA plans. So this claim is based on an independent legal duty too.

Accordingly, the Providers' three claims for unfair and deceptive business practices are based on independent duties beyond those imposed by three of their patients' ERISA plans. These claims do not satisfy the second prong of *Davila*, and hence this case was improperly removed to federal court.

## IV

Our federalism requires that federal courts refrain from adjudicating state-law claims between non-diverse parties unless a purported state-law claim is really a poorly disguised federal claim. But here, the Providers' claims for unfair and deceptive business practices are not federal claims

improperly cloaked in the language of state law. Those claims are basically that, as mental health professionals, the Providers are unfairly being cut out of the market of suppliers of mental health services by GHC's unfair and deceptive use of treatment guidelines. To state their claims under Washington law, the Providers have alleged "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (Wash. 2009). Business and property injuries of this sort are "not of central concern" to ERISA, but instead pose important public policy issues under state law that are best decided by a state court. *Franchise Tax Bd.*, 463 U.S. at 25–26. We express no opinion whether these state-law claims are valid as pleaded, but rather conclude only that these claims do not mirror a suit for benefits due under an ERISA plan.

We hold that the Providers' claims do not fall within the scope of, and so are not completely preempted by, ERISA section 502(a)(1)(B). We reverse the district court's exercise of subject matter jurisdiction in dismissing these claims, and we remand with instructions for the district court to return the entirety of this action to the Washington superior court.

**REVERSED AND REMANDED.**