Leslie E. Kobayashi, United States District Judge
Before the Court is Plaintiffs Christopher Carpenter, Mary T. Bulzomi, Daniel K. Iwasaki, Bernie L. Acoba, Roman Gulla Bibat, and Angie Siapno Bibat's ("Plaintiffs") Motion for Order of Remand ("Motion"), filed on February 28, 2019. [Dkt. no. 13.] Defendant PNC Bank, N.A. ("PNC") filed its memorandum in opposition on March 29, 2019, and Plaintiffs filed their reply on April 5, 2019. [Dkt. nos. 21, 22.] This matter came on for hearing on April 19, 2019. For the reasons set forth below, Plaintiffs' Motion is hereby granted in part and denied in part. The Motion is granted insofar as the instant case is remanded to the state court because the non-diverse defendants were not fraudulently joined. The Motion is denied as to Plaintiffs' request for an award of removal-related attorneys' fees and costs because, although the removal was improper, PNC had an objectively reasonable basis for attempting removal.
BACKGROUND
The instant case arises out of the foreclosures of Plaintiffs' respective properties. Plaintiffs filed their Complaint in the State of Hawai'i Second Circuit Court ("state court") on December 21, 2018, and the *1342 action was removed to federal court on January 30, 2019. [Notice of Removal (dkt. no. 1), Decl. of Lauren K. Chun, Exh. 1 (Complaint), Exh. 2 (First Amended Complaint, filed 12/27/18).]
According to the First Amended Complaint: Plaintiffs Christopher Carpenter ("Carpenter") and Mary T. Bulzomi ("Bulzomi") are residents and citizens of New Jersey; Plaintiffs Daniel K. Iwasaki ("Iwasaki") and Bernie L. Acoba ("Acoba") are residents and citizens of Hawai'i; and Plaintiffs Roman Gulla Bibat and Angie Siapno Bibat ("Bibats") are residents of Nevada, but they are in the process of moving to Hawai'i, which they intend to make their permanent residence. [First Amended Complaint at ¶¶ 3-8.] PNC is the successor by merger to National City Bank ("NCB"). PNC is organized under United States law and Delaware law, and has its principal place of business in Pennsylvania. [Id. at ¶ 9.]
Plaintiffs acknowledge their respective mortgages each gave the mortgagee a power of sale, which authorized the mortgagee to sell the property in the event of default. Plaintiffs contend each mortgagee agreed to sell the property "in a manner reasonably calculated to obtain the best possible price for the" property. [Id. at ¶ 36.] According to the First Amended Complaint, National City Mortgage ("NCM") and/or PNC asserted the right to use Haw. Rev. Stat. Chapter 667, Part I (2008) for the power of sale as the mortgagee and/or the assignee of each of Plaintiffs' mortgages. [Id. at ¶ 37.]
From 2009 through 2011, PNC was represented by the law firm Routh Crabtree Olson, which later became known as RCO Hawaii LLLC ("RCO"), in PNC's nonjudicial foreclosures in Hawai'i. [Id. at ¶ 21.] NCM and/or PNC, acting through RCO, commenced nonjudicial foreclosure proceedings against Plaintiffs, pursuant to the respective mortgages and Haw. Rev. Stat. § 667-5 (2008). [Id. at ¶ 38.]
Plaintiffs allege that the foreclosure notices prepared for the foreclosure of each of Plaintiffs' properties violated Haw. Rev. Stat. § 667-7(a)(1) (2008) because none contained an adequate description of the property to be sold. [Id. at ¶ 43.] Plaintiffs also allege that, in each foreclosure, only a quitclaim deed was offered. [Id. at ¶ 44.] Offering and selling only a quitclaim deed, Plaintiffs contend, breached the mortgagee's duties because it was not reasonably calculated to obtain the best price for the property. [Id. at ¶ 46.]
Further, in each foreclosure, the auction was held on a date other than that specified on the respective foreclosure notice, i.e. the actual auction date was unpublished, and no notice of the postponement of the sale was published. Either PNC or its nominee was the successful bidder at each auction; the properties were conveyed to PNC or its nominee; and foreclosure affidavits were recorded. In this manner, Plaintiffs assert they were wrongfully deprived of their properties, and these sales are either void or voidable because of PNC's failure to comply with Chapter 667, Part I and the applicable case law. [Id. at ¶¶ 47-48.]
Defendant Robert White ("White") claims current title to Carpenter and Bulzomi's property, Defendant Guinevere Ray Stromberg ("Stromberg") claims current title to Iwasaki and Acoba's property, and Defendants Enrique Piano Paa, Jr. and Joyce Lan Kim Paa ("Paas") claim current title to the Bibats' property. [Id. at ¶ 77.] White, Stromberg, and the Paas (collectively "Purchaser Defendants") are all residents and citizens of Hawai'i. [Id. at ¶¶ 10, 12, 17.]
In a nutshell, Plaintiffs' claims against the Purchaser Defendants arise out of the *1343 contention that the foreclosure affidavits used to support the foreclosures of each of Plaintiffs' properties constitute constructive or actual notice of apparent defects in the chain of title. As a result, Plaintiffs contend the Purchaser Defendants are not bona fide purchasers ("BFPs"). Plaintiffs also argue PNC's quitclaim deeds to its nominees were void ab initio , and therefore the special warranty deed from the nominees to each of the Purchaser Defendants is also void. See, e.g., id. at ¶¶ 82-83.
Plaintiffs assert they were all members of the putative class in Fergerstrom v. PNC Bank, N.A., CV 13-00526 DKW-RLP ("Fergerstrom"), which was originally filed in the State of Hawai'i First Circuit Court on September 9, 2013.[1] Fergerstrom was removed to this district court, and class certification was denied on September 18, 2018. Thus, Plaintiffs argue the statute of limitations on their claims was tolled starting September 9, 2013 until September 18, 2018, and therefore their claims against PNC are timely. [Id. at ¶ 18.]
Plaintiffs assert the following claims: a wrongful foreclosure claim against PNC ("Count I"); unfair and deceptive trade practices and unfair methods of competition, in violation of Haw. Rev. Stat. Chapter 480, against PNC ("Count II"); and quiet title and ejectment against the Purchaser Defendants, and against: First California Mortgage Company ("FCMC") - White's mortgagee; Defendant Bank of America, N.A. ("Bank of America") - Stromberg's mortgagee; Defendant Wells Fargo Bank, N.A. - the Paas' mortgagee; and Defendant Mortgage Electronic Registration Systems, Inc. - FCMC and Bank of America's nominee ("Lienholder Defendants" and "Count III").
PNC removed this case based on diversity jurisdiction. [Notice of Removal at ¶ 10.] PNC contends Plaintiffs are either citizens of Hawai'i or New Jersey, although the Bibats may be citizens of Nevada. PNC is a Delaware citizen. Thus, there is complete diversity between Plaintiffs and PNC. PNC argues the citizenship of the Purchaser Defendants and Lienholder Defendants need not be considered because they were fraudulently joined.
Plaintiffs now seek remand of this case: 1) because this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332 ;[2] and/or 2) based on the forum defendant rule, 28 U.S.C. § 1441(b)(2), and also seek an award of attorneys' fees and costs, pursuant to 28 U.S.C. § 1447(c).
STANDARD
I. General Removal Principles
The general statute governing removal, 28 U.S.C. § 1441, is "strictly construe[d] ... against removal jurisdiction." Hansen v. Grp. Health Coop., 902 F.3d 1051, 1056 (9th Cir. 2018) (citations and quotation marks omitted).
If a district court determines at any time that less than a preponderance of the evidence supports the right of removal, it must remand the action to the state court. See Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka, 599 F.3d 1102, 1107 (9th Cir. 2010) ; California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004). The removing defendant bears the burden of overcoming the "strong presumption *1344 against removal jurisdiction." Geographic Expeditions, 599 F.3d at 1107 (citation omitted).
Id. at 1057. The " 'strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper,' and that the court resolves all ambiguity in favor of remand to state court." Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (per curiam)).
II. Diversity Jurisdiction and Fraudulent Joinder
PNC removed this case pursuant to 28 U.S.C. § 1332(a), which provides, in relevant part, that federal district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between - (1) citizens of different States." Diversity jurisdiction requires complete diversity of citizenship, i.e. , that every plaintiff be a citizen of a different state from every defendant. Grancare, LLC v. Thrower ex rel. Mills, 889 F.3d 543, 548 (9th Cir. 2018) (citing Caterpillar Inc. v. Lewis, 519 U.S. 61, 68, 117 S.Ct. 467, 136 L. E. 2d 437 (1996) ). However, when determining if complete diversity exists, the court disregards the citizenship of any fraudulently joined defendants. Id. (citing Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146, 152, 34 S.Ct. 278, 58 L.Ed. 544 (1914) ).
There are two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Hunter v. Philip Morris USA, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting Smallwood v. Illinois Cent. RR. Co., 385 F.3d 568, 573 (5th Cir. 2004) ). Fraudulent joinder is established the second way if a defendant shows that an "individual[ ] joined in the action cannot be liable on any theory." Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998). But "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Hunter, 582 F.3d at 1046 (quoting Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277, 1279 (11th Cir. 2003) (per curiam)) (emphasis added). A defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a "heavy burden" since there is a "general presumption against [finding] fraudulent joinder." Id. (citations omitted).
... We have declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal. See Hunter, 582 F.3d at 1046 (holding that an implied preemption affirmative defense was not a permissible ground for finding fraudulent joinder).
Id. at 548-49 (emphasis and some alterations in Grancare ).
DISCUSSION
I. Fraudulent Joinder
Iwasaki and Acoba are Hawai'i citizens, [First Amended Complaint at ¶¶ 5-6,] as are the Purchaser Defendants.[3] [Id. at *1345 ¶¶ 10, 12, 17.] Thus, complete diversity is lacking, unless the Purchaser Defendants' citizenship is disregarded because they were fraudulently joined. PNC's position is that the Purchaser Defendants and Lienholder Defendants were fraudulently joined because Plaintiffs' quiet title claims against them fail as a matter of law.
A. Pleading Standard
Whether a defendant has been fraudulently joined and whether the claim against that defendant should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) do not involve the same inquiry. Grancare, 889 F.3d at 549. Said another way, Plaintiffs' claims against the Purchaser Defendants "may fail under Rule 12(b)(6), but th[ose] defendant[s have] not necessarily been fraudulently joined." See id.
The fraudulent joinder analysis looks at whether it is possible that a state court would deny a motion to dismiss the claim against the non-diverse defendant. Id. (quoting Hunter, 582 F.3d at 1046 ). Integral to this analysis is what Hawai'i law demands when determining whether a complaint fails to state a claim upon which relief can be granted. See Haw. R. Civ. P. 12(b)(6) (stating that the defense of "failure to state a claim upon which relief can be granted" may be asserted in a motion).
Admittedly, the language of Fed. R. Civ. P. 12(b)(6) is identical to Haw. R. Civ. P. 12(b)(6). These rules however are interpreted differently. In federal court, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). This requirement includes the pleading of a plausible factual basis supporting the claim. Id. ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955 )).
The Hawai'i Supreme Court, on the other hand, has "expressly reject[ed]" the Twombly/ Iqbal pleading standard and "reaffirm[ed] that in Hawai'i state courts, the traditional 'notice' pleading standard governs." Bank of Am., N.A. v. Reyes-Toledo, 143 Hawai'i 249, 252, 428 P.3d 761, 764 (2018). The supreme court stated:
the [Hawai'i Intermediate Court of Appeals'] adoption of the Pavsek [v. Sandvold, 127 Hawai'i 390, 279 P.3d 55 (2012),] "plausibility" standard is contrary to our well-established historical tradition of liberal notice pleading and undermines citizen access to the courts and to justice. Instead of deeming the factual allegations as true as we have consistently held to govern [Haw. R. Civ. P.] 12(b)(6) motions to dismiss, the standard in Pavsek results in factual weighing by the trial court, resulting in inconsistent application.
Id. at 262, 428 P.3d at 774.
Under the Hawai'i notice pleading analysis, the starting point is Haw. R. Civ. P. 8(a),[4] and the supreme court emphasized that:
*1346 Noticeably absent from Rule 8(a) is any mention of requiring "plausibility" of factual allegations, or that such allegations be "enough," or some variation of those terms.
....
... In other words, " [Haw. R. Civ. P.] Rule 8(a)(1) does not require the pleading of facts ; it requires a complaint to set forth 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " Hall [v. Kim], 53 Haw. [215,] 220, 491 P.2d [541,] 545 [ (1971) ] (citations omitted). Thus, we held whether a pleading states evidence, facts, or conclusions of law was not dispositive. See id.
Id. at 258, 428 P.3d at 770 (emphasis added). Further, "it is not necessary to plead legal theories with precision." Id. at 259, 428 P.3d at 771 (alterations, citations, and internal quotation marks omitted).
If a complaint meets the requirements of [Haw. R. Civ. P.] 8(a), dismissal pursuant to [Haw. R. Civ. P.] 12(b)(6) is appropriate where "the allegations of the complaint itself clearly demonstrate that plaintiff does not have a claim," Touchette v. Ganal, 82 Hawai'i 293, 303, 922 P.2d 347, 357 (1996), and in weighing the allegations of the complaint as against a motion to dismiss, the court "will not accept conclusory allegations concerning the legal effect of the events the plaintiff has [alleged]." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at pp. 548-53 (3d ed. 2004).
Id. at 262-63, 428 P.3d at 774-75. Using this framework, the Court considers whether it is possible a state court would rule Plaintiffs sufficiently pled their position that the Purchaser Defendants are not BFPs.
B. Bona Fide Purchasers
The Hawai'i Supreme Court has stated:
A non-bona fide purchaser is one who does not pay adequate consideration, "takes with knowledge that his transferor acquired title by fraud[,] or ... buys registered land with full notice of the fact that it is in litigation between the transferor and a third party." Akagi v. Oshita, 33 Haw. 343, 347 (1935) ; Achiles v. Cajigal, 39 Haw. 493, 499 (1952) ; see generally 92A C.J.S. Vendor and Purchaser § 547 (2010) (defining a bona fide purchaser as "one who acquires an interest in a property for valuable consideration, in good faith, and without notice of any outstanding claims which are held against the property by third parties").
Kondaur Capital Corp. v. Matsuyoshi, 136 Hawai'i 227, 240 n.27, 361 P.3d 454, 467 n.27 (2015) (alterations in Kondaur Capital ).
This Court previously dismissed a quiet title claim on the ground that the plaintiffs failed to plead plausible factual allegations supporting their position that the individuals who purchased their real property in foreclosure were not BFPs. Seegers v. CIT Bank N.A., CIVIL 17-00399 LEK-KSC, 2018 WL 1558550, at *7 (D. Hawai'i Feb. 28, 2018) ; Lynch v. Bank of New York Mellon, CIVIL 17-00195 LEK-RLP, 2017 WL 3568667, at *1, *5 (D. Hawai'i Aug. 15, 2017) (" Lynch I"). However, the issue at hand here is whether the Purchaser Defendants and Lienholder Defendants were fraudulently joined, not whether Plaintiffs' quiet title claims against the Purchaser Defendants (and the related claims against the Lienholder Defendants)
*1347 satisfy the Twombly/ Iqbal plausibility pleading standard.
The minimum elements of a quiet title claim are: the plaintiff "has a substantial interest in the property"; and "his title is superior to that of the defendants." Ka'Upulehu Land LLC v. Heirs & Assigns of Pahukula, 136 Hawai'i 123, 137, 358 P. 3d 692, 706 (2015) (citation and quotation marks omitted). Plaintiffs assert a substantial interest in their respective properties because of their prior ownership. [First Amended Complaint at ¶¶ 29, 31, 33.] Plaintiffs also allege that their title is superior to that of the Purchaser Defendants because the Purchaser Defendants all acquired their title following PNC's wrongful foreclosure of Plaintiffs' respective properties, [id. at ¶¶ 48-50,] and the Purchaser Defendants are not BFPs, [id. at ¶¶ 84, 103, 122]. Under the Hawai'i notice pleading standard, these allegations constitute a "short and plain statement" of their quiet title claims, and Plaintiffs are not required to plead supporting facts. See Reyes-Toledo, 143 Hawai'i at 258, 428 P.3d at 770 (citation and quotation marks omitted). In Reyes-Toledo, the Hawai'i Supreme Court stated:
[The plaintiff-homeowner ("Homeowner") ] also incorporated by reference the allegations in her wrongful foreclosure count into her quiet title count. Stating she was the owner of the Property, she sought to quiet title to the Property against Bank of America's adverse claim, asserting Bank of America was not the mortgagee. Accepting Homeowner's allegations as true, she has satisfied [Haw. R. Civ. P.] 8(a)'s pleading requirements by asserting that she has a substantial interest in the Property, and that her interest in the Property is greater than Bank of America's. If Bank of America is indeed not the mortgagee, Homeowner's quiet title count states a claim upon which relief can be granted....
Id. at 265-66, 428 P.3d at 777-78 (citation omitted). Consistent with its recitation of the notice pleading standard, the supreme court did not analyze whether the factual allegations in Homeowner's counterclaim were sufficient to support her position that Bank of America was not the mortgagee, nor did the supreme court analyze whether Homeowner's factual allegations in support of that position were plausible.
Although arguably not required to do so under the Hawai'i notice pleading standard, Plaintiffs stated the factual basis for their position that the Purchaser Defendants are not BFPs. Plaintiffs allege that:
1) based on statements in the publicly recorded documents regarding Plaintiffs' respective properties, each of the Purchaser Defendants had constructive, "if not actual," notice that "his title was only valid if the foreclosure was valid"; see, e.g., First Amended Complaint at ¶ 86 (as to White and Carpenter and Bulzomi's property);
2) based on statements in the recorded documents, it was apparent that there were defects in each of the foreclosure processes, and the Purchaser Defendants were required to inquire whether the relevant foreclosure in their respective chain of title complied with the applicable statutory requirements; see, e.g., id. at ¶¶ 87-88; and
3) had the Purchaser Defendants conducted such inquiries, each would have learned that the statutory requirements were not followed in the respective foreclosure processes, rendering the deeds which followed each the foreclosure void, or at least voidable, see, e.g., id. at ¶¶ 88-90.
It is a close question whether this Court can disregard Plaintiffs' argument regarding *1348 "record notice" and "inquiry notice"[5] because it is merely a "conclusory allegation[ ] concerning the legal effect of the events" described in the First Amended Complaint. See Reyes-Toledo, 143 Hawai'i at 262, 428 P.3d at 774. However, the argument cannot be automatically rejected as an unsupported legal conclusion because it involves both issues of fact and issues of law. This Court therefore proceeds to the next inquiry: whether Plaintiffs' record/inquiry notice argument obviously fails "according to the settled rules of the state," i.e. , Hawai'i state law. See Hunter, 582 F.3d at 1043.
The record/inquiry notice argument fails under the settled federal pleading rules. See Lynch I, 2017 WL 3568667, at *5 (rejecting the argument that "mere recordation of a notice of sale or a foreclosure affidavit is sufficient to provide notice to a third party, such as a bona fide purchaser, that a foreclosure was defective" and concluding that the plaintiffs' quiet title claim against the subsequent purchasers of their property was not plausible).[6] However, currently, no Hawai'i appellate decision exists which similarly rejects the record/inquiry notice theory. Without a Hawai'i appellate court decision expressly rejecting this theory, further analysis of the merits of the BFP argument is not appropriate in a motion for remand. See Grancare, 889 F.3d at 548-49 ("We have declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal."). Thus, the Court cannot conclude that Plaintiffs' record/inquiry notice theory obviously fails under the rules of settled Hawai'i law.
Clearly, if this action had been originally filed in federal court, Plaintiffs' quiet title claims against the Purchaser Defendants would not survive a motion to dismiss because Plaintiffs have failed to plead sufficient factual allegations to plausibly allege the Purchaser Defendants are not BFPs. But this is not the inquiry before the Court. Rather, Plaintiffs need only demonstrate that it is possible that a state court would conclude that the quiet title claims state a cause of action against the Purchaser Defendants. Hawai'i state courts apply a notice pleading standard, and Hawai'i appellate courts have not yet rejected the record/inquiry notice theory. Thus, it is possible a Hawai'i state court would conclude Plaintiffs sufficiently pled that their title is superior to the Purchaser Defendants' title, and PNC's fraudulent joinder argument based on BFP status cannot prevail.
*1349 C. Statute of Limitations
PNC also argues the joinder of the Purchaser Defendants and Lienholder Defendants is fraudulent because Plaintiffs' quiet title claims against them are time-barred.[7] The foreclosures of Plaintiffs' respective properties occurred in 2010 and 2011. [First Amended Complaint at ¶¶ 79, 98, 117.] In connection with the Motion, Plaintiffs have submitted the Purchaser Defendants' deeds to their respective properties. [Motion, Decl. of James J. Bickerton ("Bickerton Decl."), Exh. 9 (Special Warranty Apartment Deed from PNC's nominee to White, recorded on 8/26/11), Exh. 14 (Limited Warranty Deed from PNC to Stromberg, recorded on 6/17/11), Exh. 19 (Special Warranty Deed from PNC's nominee to the Paas, recorded on 10/21/11).] Plaintiffs' quiet title claims against the Purchaser Defendants accrued when the Purchaser Defendants acquired their respective properties, which occurred either when their deeds were executed or on recordation of those deeds. See Lynch v. Bank of New York Mellon, CIVIL 17-00195 LEK-RLP, 2018 WL 3624969, at *6 (D. Hawai'i July 30, 2018) (" Lynch II"). Based on either date, Plaintiffs' claims against the Purchaser Defendants all accrued in 2011. PNC argues a six-year statute of limitations applies because Plaintiffs' quiet title claims "depend[ ] on wrongful foreclosure claims governed by a six year statute of limitations, and the 20-year statute, [Haw. Rev. Stat.] § 657-31, governs only adverse possession cases - an issue not relevant under the facts alleged here."[8] [Mem. in Opp. at 26.]
The issue to be resolved is: whether it is possible that a state court would conclude Plaintiffs' quiet title claims are timely. No Hawai'i appellate court has expressly held which statute of limitation applies to a wrongful foreclosure claim, although the two-year statute of limitations in Haw. Rev. Stat. § 657-7 appears to have been rejected.[9] See Malabe v. Ass'n of Apartment Owners of Exec. Ctr. ex rel. Bd. of Dirs., NO. CAAP-17-0000145, 2018 WL 6258564, at *3 n.6 (Hawai'i Ct. App. Nov. 29, 2018) (citing Hungate v. Law Office of David B. Rosen, 139 Hawai'i 394, 400, 391 P.3d 1, 7 (2017) (wherein the supreme court recognized the validity of a wrongful foreclosure claim in a complaint filed four years after the foreclosure sale at issue)), cert. granted , No. SCWC-17-0000145, 2019 WL 2060931 (Hawai'i May 9, 2019). This Court, noting the lack of controlling authority, has predicted the Hawai'i Supreme Court would hold that a six-year limitations period applies to wrongful foreclosure claims pursuant to Haw. Rev. Stat. § 657-1(1).[10]
*1350 Lowther v. U.S. Bank N.A., 971 F. Supp. 2d 989, 1013-14 (D. Hawai'i 2013) ; see also Lynch II, 2018 WL 3624969, at *3. There is, however, no settled Hawai'i law regarding the statute of limitations for a wrongful foreclosure claim.
Even if Hungate and Malabe constitute settled law that the six-year statute of limitations applies to a wrongful foreclosure claim, they do not necessarily constitute settled law regarding the statute of limitations for a quiet title claim arising from a wrongful foreclosure. In Lynch II, this Court stated:
It is not clear what statute of limitations period applies to a quiet title claim arising from an alleged wrongful foreclosure. The Hawai'i Supreme Court has stated that the appropriate statute of limitations period is determined by the nature of the claim or right alleged in the pleadings, not by the form of the pleadings. Au v. Au, 63 Haw. 210, 214, 626 P.2d 173, 177 (1981). The supreme court has also recognized that "where two or more causes of action arise from a single transaction, different statute of limitations are applicable to the separate claims." Id. [The mortgagee's] argument that the same statute of limitations for Plaintiffs' wrongful foreclosure claim automatically applies to Plaintiffs' quiet title claims is therefore rejected. Looking at the nature of Plaintiffs' quiet title claims, at a minimum, the § 657-1(1) six-year statute of limitations would apply for similar reasons that statute of limitations applies to Plaintiffs' wrongful foreclosure claim. However, it is possible that a longer limitations period, such as the § 657-31 twenty-year period, may apply . This Court need not decide which statute of limitations applies because, even under the shorter period, Plaintiffs' quiet title claims would be timely.
2018 WL 3624969, at *6 (emphases added). Based on Au, there is settled Hawai'i law that the statute of limitations for Plaintiffs' quiet title claims is not automatically determined by the statute of limitations for their wrongful foreclosure claim.
It is true that: the twenty-year statute of limitations in § 657-31 is most often applied to adverse possession claims; cf. Malulani Grp., Ltd. v. Kaupo Ranch, Ltd., 133 Hawai'i 425, 435, 329 P.3d 330, 340 (Ct. App. 2014) (noting that § 657-31 applies to both an adverse possession claim and a prescriptive easement claim because the claims have similar elements); and adverse possession is not at issue in this case. Further, the better reasoned conclusion is that the six-year statute of limitations applies to quiet title claims arising from a wrongful foreclosure. See, e.g., Moore v. Kailua Kona Props., LLC, CIVIL 18-00159 LEK-KSC, 2018 WL 2172489, at *2 (D. Hawai'i May 10, 2018) ("Plaintiff's quiet title claim is likely subject to a six-year statute of limitations, pursuant to Haw. Rev. Stat. § 657-1(4)." (citation omitted)). However, no Hawai'i appellate court currently has decided that the six-year statute of limitations applies or that the twenty-year statute of limitations does not apply. This Court therefore cannot conclude that Plaintiffs' quiet title claims against the Purchaser Defendants are time-barred under settled Hawai'i law.
Because it is possible a Hawai'i state court could conclude that Plaintiffs' quiet title claims against the Purchaser Defendants, and the related quiet title claims against the Lienholder Defendants, are *1351 subject to the twenty-year statute of limitations and thus timely, PNC's fraudulent joinder argument based on the statute of limitations must be rejected.
D. Summary
It is possible a state court would rule that: 1) under the notice pleading standard, Plaintiffs have sufficiently alleged their title is superior to the Purchaser Defendants' title; and 2) Plaintiffs' quiet title claims are subject to the twenty-year statute of limitations and thus are timely. As such, the Purchaser Defendants were not fraudulently joined. Similarly, because Plaintiffs' quiet title claims against the Lienholder Defendants are based upon Plaintiffs' claims against the Purchaser Defendants, the Lienholder Defendants were not fraudulently joined. Because there was no fraudulent joinder, the citizenship of all defendants must be considered for purposes of diversity jurisdiction. This Court therefore lacks diversity jurisdiction over the instant case because there is no complete diversity of citizenship. In light of these rulings, it is not necessary to address Plaintiffs' other arguments in favor of remand.
Plaintiffs' Motion is granted insofar as the instant case must be remanded to the state court.
II. Removal-Related Fees and Costs
Plaintiffs also seek an award of the attorneys' fees and costs they incurred because of the removal of this case. 28 U.S.C. § 1447(c) states, in pertinent part: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."
Absent unusual circumstances, a court may award costs and attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Martin v. Franklin Capital Corp., 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed. 2d 547 (2005). Removal is not objectively unreasonable "solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." Lussier v. Dollar Tree Stores, Inc., 518 F.3d 1062, 1065 (9th Cir. 2008).
Grancare, 889 F.3d at 552. In light of the case law from this district court supporting PNC's positions regarding the Purchaser Defendants' BFP status and the statute of limitations applicable to Plaintiffs' quiet title claims, PNC had "an objectively reasonable basis for seeking removal." See id. Plaintiffs' request for an award of removal-related attorneys' fees and costs is therefore denied.
CONCLUSION
On the basis of the foregoing, Plaintiffs' Motion for Order of Remand, filed February 28, 2019, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as this Court: CONCLUDES that the removal of this case was improper because the non-diverse defendants were not fraudulently joined; and REMANDS the instant case to the state court. The Motion is DENIED as to Plaintiffs' request for an award of removal-related attorneys' fees and costs. The Clerk's Office is DIRECTED to effectuate the remand on June 6, 2019 , unless PNC files a timely motion for reconsideration of the instant Order.
IT IS SO ORDERED.

Plaintiffs' counsel in the instant case are among the counsel who represent the plaintiffs in Fergerstrom.

Plaintiffs also argue this Court lacks jurisdiction under 28 U.S.C. § 1331, but PNC did not assert federal question jurisdiction as a basis of removal. See Notice of Removal at ¶¶ 10-12.

When the First Amended Complaint was filed, the Bibats were residents of Nevada, but they were in the process of permanently relocating to Maui. [First Amended Complaint at ¶¶ 3-8.] Thus, they may be Hawai'i citizens for purposes of diversity jurisdiction. See Lockard v. Lockard, 15 F.3d 1086 (9th Cir. 1993) ("An individual is a citizen of his or her state of domicile, which is defined as the location where he or she has established a fixed habitation or abode in a particular place where he or she intends to remain permanently or indefinitely." (citation and internal quotation marks omitted)). However, because Iwasaki and Acoba are Hawai'i citizens, this Court need not determine whether the Bibats are Nevada citizens or Hawai'i citizens.

Haw. R. Civ. P. 8(a) states, in pertinent part: "A pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a) is similar, but it also requires that the basis for jurisdiction be pled.

See, for example, Plaintiffs' Memorandum in Support of Motion at 30, for their theory regarding "record notice" and "inquiry notice."

Similarly, in Seegers, this Court stated:
While Plaintiff alleges that the Mortgagee's Affidavit contains information about Defendants' alleged wrongdoing, this falls far short of providing the factual content necessary to allow the reasonable inference that the Current Owners knew of the alleged wrongdoing. See Lynch [I,] 2017 WL 3568667, at *5 .... Plaintiff fails to plead factual allegations plausibly linking the Current Owners to Defendants' alleged misconduct. For example, there is no allegation that information about Defendants' alleged wrongdoing was contained within any document that the Current Owners actually read or were obliged to read.
Seegers, 2018 WL 1558550, at *6 ; see also Tilley v. Bank of New York Mellon, Civil No. 17-00524 HG-RLP, 2018 WL 1415171, at *13-14 (D. Hawai'i Mar. 21, 2018) (rejecting the plaintiffs' theory asserting constructive notice based on the contents of recorded documents), appeal dismissed , No. 18-15733, 2018 WL 5269236 (9th Cir. July 30, 2018). The same counsel who represent Plaintiffs in the instant case also represented the plaintiffs in Lynch, Seegers, and Tilley.

The statute of limitations applicable to each of Plaintiffs' claims against PNC was tolled in light of Fergerstrom, until the denial of class certification. See, e.g., Lee v. ITT Corp., 662 F. App'x 535, 536 (9th Cir. 2016). However, there was no tolling as to Plaintiffs' claims against the Purchaser Defendants and Lienholder Defendants because no subsequent purchaser of foreclosed property was named as a defendant in Fergerstrom. See generally Fergerstrom, Notice of Removal, filed 10/10/13 (dkt. no. 1), Exh. A (Complaint); Fergerstrom, First Amended Complaint, filed 5/18/18 (dkt. no. 91).

Section 657-31 states: "No person shall commence an action to recover possession of any lands, or make any entry thereon, unless within twenty years after the right to bring the action first accrued."

Section 657-7 states: "Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13."

Section 657-1 states, in relevant part: "The following actions shall be commenced within six years next after the cause of action accrued, and not after: (1) Actions for the recovery of any debt founded upon any contract, obligation, or liability, excepting such as are brought upon the judgment or decree of a court[.]"